McFarland, J.,
delivered the opinion of the Court.
The following facts are sufficiently shown in the bill of exceptions, to raise the questions of law discussed :
In April, 1869, Campbell & Richards, merchants, doing business at Roaring Springs, Ky., ordered from a firm in Philadelphia six cases of boots and shoes. The boxes were marked: “Campbell & Richards, Roaring Springs, Ky., care Whitlock, McNichols & Co., Linton, Ky.,” and delivered to the Pennsylvania Railroad for transportation, and a receipt taken with conditions annexed, among other things providing in substance that said Pennsylvania Railroad Company should not be liable for the goods beyond the terminus of their road. The plaintiff in error owns a line of railway extending from Louisville, in Kentucky, to the line of Tennessee, some thirteen miles north of Clarks- *255 ville, in said latter State, there connecting with the Memphis, Clarksville and Louisville Railroad, which said latter road passes by the city of Clarksville, and which, at the time of this transaction, had been leased, and was being operated, by the plaintiff in error. Linton, Ky., is on the Cumberland River, some sixty miles below Clarksville, and between those points steamboats were running for the transportation of freight at the time of this transaction. The depot of the Memphis, Clarksville and Louisville Railroad at Clarksville is some four hundred yards distant from the steamboat landing on the Cumberland, where a wharf-boat was kept for the storage of goods to be shipped by the river. Roaring Springs is some thirteen miles from Linton, Ky.
It appears the goods in question were received by the plaintiff in error at Louisville and transported to Clarksville, arriving there about the 27th or 28th of April, and were stored in the freight depot of the road. It is admitted that Clarksville is the proper railroad station where the goods should have been stopped on their route to Linton. It is proven by the agent that he immediately mailed to Campbell & Richards a notice that the goods had arrived. On the 14th of May, 1869, Richards, of the firm of Campbell & Richards, called at the railroad depot at Clarksville, and inquired for the goods. Other goods were delivered to him, but these were not; he was told they had not arrived. This seems probably to have been a mistake or oversight of a young man who was at the time in the office, though not the regular agent. *256 Campbell & Richards having several times inquired of Whitlock, McNichols & Co., at Linton, Ky., for their goods, and having written to the parties of whom they purchased, and hearing nothing of the goods, about the last of June supplied the place of these goods by the purchase of others. Afterwards, by the 10th of July, they were, for the first time, informed by letters from the parties of whom they had purchased, that the goods had been traced to Clarksville. About the 6th of June of the same year the railroad agent at Clarksville delivered the goods to the firm of Whit-lock, McKinney & Co., a firm of commission and forwarding merchants, as they are styled in the record, and they were by them stored in their warehouse at Trice’s Landing, on the Cumberland, near the town of New Providence, some two miles from Clarksville. Said firm of Whitlock, McKinney & Co. kept a line of drays running between their warehouse and the depot, but did not haul goods into the country. A line of wagons ran between Trice’s Landing and Roaring Springs. Whitlock, McKinney & Co. did not forward the goods, because, as appears, it was not their custom to forward goods unless directed to do so by the owner. They sent word to Campbell & Richards that the goods were in their possession. It appears, however, that Campbell & Richards did not receive the information until after they had purchased other goods. They afterwards saw the goods in the warehouse of Whitlock, McKinney & Co., but refused to receive them, and brought this action to recover their value.
*257 It appears that Whitlock, McNichoIs & Co., is composed of three of the members of Whitlock, McKinney & Co., but the business of the two firms does not appear to be in any way connected.
The declaration avers the failure of the plaintiff to carry the goods according to its undertaking, which is laid in different forms, also joining counts in trover. The verdict and judgment were in favor of the plaintiff below.
In two recent cases at Knoxville, not yet reported, this Court has decided that where there are connecting lines of railway, and one road receives goods for transportation, marked and consigned to a point beyond the terminus of its own road, but on the line of • the - connecting road, the road first receiving the. goods will be held liable for their delivery at their destination, unless this liability is limited by express contract. See cases of E. T. Va. & Ga. R. R. v. Rogers & Hartsell, and Western & Atlantic Railroad Co., v. McElwee, et. als.
These cases somewhat change the rule followed by perhaps a majority of the American cases, and follow the English rule. In this case, however, it appears that the liability of the Pennsylvania Railroad was expressly limited to the terminus of their road, and the proof indicates that the liability of the plaintiff in error was to be governed by the same contract. The case is probably further distinguishable from the cases above referred to by the fact that the road of the plaintiff in error is only an intermediate link, and that there is in reality no railroad connection with *258 either Linton or Roaring Springs, Kentucky, and it seems somewhat doubtful whether there is a line of common carriers connecting the railroad depot at Clarks-ville with Linton, Kentucky. Steamboats run from the boat landing at Clarksville to Linton, but it does not clearly appear whether or not there was any line of common carriers connecting the depot and boat landing, or by what means freight was transported between these two points.
Although these goods were directed to the care of Whitlock, McNichol & Co., Linton, Kentucky, there can be no doubt that the owners in person were entitled to the goods at Clarksville, upon tendering the charges. Yet, the failure to deliver them when called for by Richards on the 14th of May, was not necessarily a conversion, inasmuch as it was probably an inadvertence, and without any intention to deny the rights of the owners. Yet it was probably such negligence as would have rendered the company liable for any damages resulting to the owner on account of the delay thus occasioned, if they had been afterwards received by the owners-Mere delay however, is not a conversion.
The duty of the plaintiff in error in respect to these goods, as a carrier, seems to have been performed by carrying the goods to Clarksville. What then was its duty? This depends upon the facts in regard to the means by which, according to the usual course of business, the goods were to be forwarded. If by its contract its liability as a carrier only extended to the terminus of its route, it was not bound to *259 convey the goods beyond its depot; but its duty then was “to deliver the goods to the next carrier in a reasonable time according to the usual course of business, with all convenient dispatch.” East Tennessee and Georgia Railroad Co., v. Nelson, 1 Col., 276.
But then it must appear that there were carriers whose business it was to receive and forward goods on this route; for if there were no such carriers ready to receive and forward on this route then of course the plaintiff in error would not be liable for a failure to deliver the goods to such carriers. How the facts are, in regard to the usual course of business by which freights were transported between the railroad depot of the plaintiff in error at Clarksville and points on the Cumberland River, does not clearly appear. It does appear with reasonable certainty that the usual way was by steamboats from the boat landing at Clarks-ville; but then it does not clearly appear whether there were any regular carriers or means of transportation between the depot and boat landing. True, this is but a short distance of some four hundred yards, and yet it may be as important as if the line were longer.
The plaintiff in error was not bound to transport the goods over this link of the route, unless it had an established custom or usage by which it was bound to do so..
In this cause, after considerable delay, the plaintiff in error delivered the goods to Whitlock, McKinney & Co., a firm of commission merchants doing business at Trice’s Landing, two miles from Clarksville. As we have seen, the mere delay in making *260 this delivery would not be a conversion, although the carrier might be liable in damages for the delay, provided the delivery was to the right party; and the question in the cause was,, whether or not the plaintiff in error, in delivering these goods to Whitlock, McKinney & Co. complied with its duty to deliver to the next carrier according to the usual course of business.
Upon this his Honor, the Circuit Judge, instructed the jury as follows: “If you find the defendant received the goods from the Pennsylvania Railroad Company, marked Campbell & Richards, Roaring Springs, Kentucky, care Whitlock, McNichols & Co., Linton, Kentucky, and brought them to Clarksville, and delivered them to Witlock, McKinney & Co., New Providence, Tennessee, the defendant would be guilty of a conversion of the goods, and the plaintiff would have a right to recover on the second count in the declaration,” etc.
The error is apparent, because his Honor assumes that Whitlock, McKinney & Co. were not common carriers whose business it was to receive goods at the depot at Clarksville and forward them by the usual route to Linton, Ky. However clear this fact may have appeared from the proof, it was nevertheless a question of fact for the jury. His Honor should have instructed the jury, that it was the duty of the plaintiff in error to have delivered these goods to the next carrier, according to the usual course of business, in a reasonable time, and with all ■ convenient dispatch, which would mean the next carrier carrying goods over the route these goods were intended to *261 take, and he should have defined to them what a common carrier is, and should have left to the jury to determine from the proof whether or not Whitlock, McKinney & Co. were common carriers according to the usual course of business, engaged in carrying goods upon the usual route between Clarksville and Linton, Ky. If they were, and theirs was the usual route, or one of two routes equally used by the public, then a delivery to them was not a conversion; but if they were not, but were entirely off that route, and not engaged in carrying goods over the usual route between these two points, and the goods were not carried and delivered, then the owner would have a right to maintain an action for their value': 2 Head, 290.
Perhaps if there were two routes between the points designated equally used by the public, a delivery to a carrier on either route would be good when there is nothing to indicate which of the two routes the goods were intended to take.
If the proof should show that there were no carriers to receive and forward the goods upon the route indicated, then the duty of the plaintiffs in error was to retain the goods and notify the owner, and in such case a delivery to other parties, not in accordance with the usages of business, would render them liable.
There were other errors in the charge, but it is manifest that the case was decided upon the instruction above set forth, and upon the error in this the judgment must be reversed.